UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

        Plaintiff,

-v-

DAMIEN LEWIS,

        Defendant.

Case No. 3:10-cr-100

Judge Thomas M. Rose

---

**ENTRY AND ORDER OVERRULING LEWIS'S MOTION TO SUPPRESS (Docs. #28, 48)**

---

On June 22, 2010, a federal Grand Jury returned a seven-count Superseding Indictment charging Defendant Damien Lewis ("Lewis") and another individual with drug trafficking and related firearm offenses. On August 2, 2010, Lewis filed a Motion To Suppress all evidence recovered from a search of a residence at 833 Blanche Avenue, Dayton, Ohio. (Doc. #28.) On August 10, 2010, a federal Grand Jury returned a seven-count Second Superceding Indictment charging Lewis and others with drug trafficking and related firearm offenses. (Doc. #32.)

Lewis now argues that pursuit and detention of himself was not justified, and any evidence resulting therefrom should be excluded. Evidentiary hearings on Lewis's Motion To Suppress were conducted on October 5, 2010 and November 16, 2010. The Trial of this matter is set for February 22, 2011. (Doc. #39.)

Following the hearings, Lewis filed a Memorandum In Support of his Motion To Suppress. (Doc. #48.) The Government has responded. (Doc. #52.) The time has run and Lewis has not filed a Reply. Therefore, Lewis's Motion To Suppress is ripe for decision.

Findings of relevant facts will first be set forth. This will be followed by an analysis of

Lewis's Motion To Suppress. The relevant legal provisions will be set forth as part of the analysis.

## FINDINGS OF RELEVANT FACTS

On November 27, 2010, Dayton, Ohio Police Department ("DPD") Patrol Division Officer Eric Hamby ("Officer Hamby") and his supervisor, Sergeant David Wolford ("Sergeant Wolford"), responded to a citizen complaint received through DPD's dispatch center. (Transcript of 10/5/10 Motion To Suppress Hearing ("10/5/10 Hr'g Tr.") at 4-6, doc. #40.) A citizen had called in and reported that drug activity was occurring in an alley near Blanche Street close to her home. (Id.)

Officer Hamby drove to the complainant's residence and met with the caller. (Id. at 8.) Sergeant Wolford remained in their police cruiser which was parked in an alley to the rear of the complainant's residence. (Id.)

The complainant told Officer Hamby that approximately every thirty (30) minutes, drug customers, who were usually Caucasian, would arrive in the alley at the rear of her home to purchase drugs. (Id. at 12-13.) From the back door of her residence, the complainant showed Officer Hamby where she observed the drug customers park their vehicles in the alley. (Id.) This was the same alley in which Officer Hamby and Sergeant Wolford had parked their police cruiser. (Id. at 13.)

According to the complainant, minutes after the drug purchasers would park their vehicle, a supplier would approach the customer's vehicles on foot and sell drugs to the customers. (Id. at 12-13.) The supplier would approach the alley from the direction of where some vacant houses were located. (Id. at 13.) The complainant only identified the seller's gender

and race. (Id. at 47.) She offered no further description. (Id. at 47-48.) Also, she did not indicate that the black male that came to the cars in the alley was the same black male on each occasion. (Id. at 57.) Thus, the only information obtained from the complainant and available to Officer Hamby and Sergeant Wolford was an alleged drug seller's race and gender and the location where the drug trafficking was taking place. (Id. at 48.)

After meeting with the complainant, Officer Hamby returned to the cruiser and began debriefing Sergeant Wolford about the information received from the complainant. (Id. at 14-15.) While they were talking, a red Dakota truck, occupied by two white males, drove into the alley from the direction opposite which the police cruiser was parked. (Id. at 15.) The truck came to a stop thirty (30) to fifty (50) feet from the cruiser. (Id. at 50-51.)

Within seconds, a black male, who was later identified as Lewis, approached the truck from the direction that had been indicated by the complainant. (Id. at 16, 20-21, 51.) There were no other vehicles in the alley. (Id. at 72-73.)

The black male did not see the cruiser or the officers until he was almost to the driver's door of the truck. (Id. at 17-18.) When he saw the uniformed officers in the cruiser, the black male immediately fled the scene on foot, running back toward the direction from which he had approached. (Id. at 17, 51-53.) The black male did not make any contact with the occupants of the truck nor was he observed to be carrying anything. (Id. at 53.)

Officer Hamby exited his cruiser and gave chase on foot while Sergeant Wolford stayed behind to secure the occupants of the truck. (Id. at 18.) Officer Hamby followed the black male on foot and observed him run into a nearby residence located at 833 Blanche Street. (Id. at 19-20, 58.) The black male was out of Officer Hamby's sight for a "millisecond" as Officer Hamby

turned a corner, but, after turning the corner, Officer Hamby still saw the same black male running at full speed. (Id. at 54.)

The black male entered the rear door of the residence at 833 Blanche and locked it behind him. (Id. at 19-20, 58.) Officer Hamby radioed his position to Sergeant Wolford, who, from his position in the alley, could see the rear of the Blanche Street residence. (Id. at 20, 60.) Concerned that the black male might flee, Officer Hamby proceeded to the front of the house. (Id. at 20.) At the time, Officer Hamby did not know whose house it was or if the house was occupied. (Id. at 21.)

After checking the front and rear of the house, Officer Hamby pushed in an air conditioner that had been in a window at the back of the house. (Id. at 21, 60-61.) Joanna Riley ("Riley"), later identified as Lewis's mother, then came to the open window. (Id. at 23-25, 62.)

Officer Hamby identified himself and advised Riley that a male had just run into the house. (Id. at 25-26.) He asked her to unlock her front door to allow him to clear the scene. (Id.) In response, Riley closed the window. (Id. at 26.)

Officer Hamby then heard a series of rustling noises, which, based upon his training and experience, were consistent with someone trying to hide or destroy contraband. (Id. at 27-28.) He next re-established communication with Riley through a front window. (Id. at 29-31.) However, despite repeated requests, Riley refused to exit the house or unlock the front door. (Id.)

After additional police assistance arrived, Lewis, the black male that Officer Hamby had chased, announced that he was coming out of the house. (Id. at 32.) Officer Hamby directed Lewis to exit through the front door, however, Lewis exited through a window. (Id. at 33.) Lewis was then patted down and detained in the back seat of a police cruiser. (Id.)

The police then obtained a search warrant for the residence at 833 Blanche. (Transcript of 11/16/10 Motion To Suppress Hearing ("11/16/10 Hr'g Tr.") at 21-23, doc. #41.) In the residence, they found three loaded handguns, approximately $50,000 in U.S. currency, a digital scale, razor blades, two bags of unused gel capsules, documents with Lewis's name on them, and men's clothing. (Id. 25-31.) One of the firearms had been reported as stolen. (Id. at 31-32.)

Riley claimed to have no knowledge of these items, indicated that she was the sole resident of 833 Blanche, and indicated that her sons Kendall and Damien Lewis visited frequently. (Id. at 33.) Based upon these circumstances, Lewis was arrested and charged with weapons under disability and receiving stolen property. (10/5/10 Hr'g Tr. at 43-44.)

## ANALYSIS

Lewis argues that Officer Hamby's pursuit, the forcible removal of the air conditioner and the subsequent detention of Lewis were not proper under the Fourth Amendment. The Fourth Amendment protects, "[t]he right of the people to be secure in their persons… against unreasonable searches and seizures." U.S. Const. Amend. IV. This protection extends to all seizures, including the brief investigatory stops described by the Supreme Court in *Terry v. Ohio*. *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

However, an officer may stop a person, as provided in *Terry,* if the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity. *United States v. Place*, 462 U.S. 696, 702 (1983). The reasonable, articulable suspicion must be based upon specific, objective facts indicating that society's legitimate interests require the seizure. *Brown v. Texas*, 443 U.S. 47, 51 (1979). Thus, the detaining officers must have a particularized and objective basis for detaining the individual based upon the totality

of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417 (1981).

An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime, but the detaining officer is not required to ignore the relevant characteristics of a location. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Also, evasive behavior, standing alone, is not enough to support reasonable, particularized suspicion that the person is committing a crime, but it is a factor that can be considered and may be suggestive of wrongdoing. *Id.*

In this case, Officer Hamby had a reasonable particularized suspicion that Lewis had or was attempting to commit a crime when he pursued and seized Lewis. Officer Hamby and Sergeant Wolford were dispatched to the scene to investigate drug activity. The activity that Officer Hamby and Sergeant Wolford observed in the alley exactly matched the drug activity described by the complainant. White males drove up in a vehicle and a black male came from the area of vacant houses to meet them.

Further, Lewis, the black male, fled when he saw the police cruiser. The black male then locked himself into a house and refused, for a period of time, to come out. Given the totality of the circumstances, Officer Hamby's pursuit of Lewis and eventual detention was not violative of the Fourth Amendment.

## CONCLUSION

Lewis has not shown that his detention by Officer Hamby was improper under the Fourth Amendment. Further, Lewis initially challenged the search of 533 Blanche Street but did not pursue this issue in subsequent briefing. Therefore, Lewis's Motion To Suppress (doc. #28) is OVERRULED.

**DONE** and **ORDERED** in Dayton, Ohio this First Day of February, 2011.

                       **s/Thomas M. Rose**

                     _____
                       THOMAS M. ROSE
                  UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record